1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    VICTOR MANUEL SANCHEZ BRITO,              No.  2:18-cv-00097-KJM-DB

12                    Plaintiff,

13           v.                                 ORDER

14    WILLIAM P. BARR,[1] United States
      Attorney General,
15
                      Defendant.
16

17

18           On July 19, 2017, plaintiff Victor Manuel Sanchez Brito[2] filed a petition for

19    review with request for emergency stay of his removal proceedings before the Ninth Circuit Court

20    of Appeals.  Petition (*Brito v. Sessions*, 17-72066 (9th Cir. July 19, 2017)), ECF No. 2.  On

21    January 17, 2018, the Ninth Circuit transferred the matter to this court for resolution of the factual

22    question of plaintiff's citizenship under 8 U.S.C. § 1252(b)(5)(B).  Transfer Order (*Brito v.*

23    *Sessions*, 17-72066 (9th Cir. Dec. 19, 2017)), ECF No. 1.  Defendant, United States Attorney

24    _____

25           [1] Although the Ninth Circuit's transfer order names Attorney General Jefferson B.
      Sessions III as defendant, current Attorney General William P. Barr is automatically substituted
26    as named defendant under Federal Rule of Civil Procedure 25(d).

27           [2] Although defendant refers to plaintiff as Victor Manuel Brito Sanchez, the court adopts
      the naming convention consistent with the petition filed before the Ninth Circuit and lists
28    plaintiff's name as Victor Manuel Sanchez Brito.

                                            1

1   General William Barr, moves for summary judgment contending no material question remains

2   regarding plaintiff's Mexican citizenship.  Mot., ECF No. 20-1.  Plaintiff opposes the motion,

3   Opp'n, ECF No. 21, and defendant has replied, Reply, ECF No. 22.  For the reasons articulated

4   below, defendant's motion for summary judgment is DENIED.

5   I.      BACKGROUND

6           A.      Procedural History

7                   On January 30, 2017, a United States Immigration Court found plaintiff

8   inadmissible for purposes of obtaining United States citizenship and denied his applications for

9   asylum and withholding of removal to Mexico under sections 208 and 241(b)(3) of the

10  Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3) ("INA").  Mot. at 2; Petition, Ex.

11  A at 1 (Board of Immigration Appeals decision).  Plaintiff appealed the Immigration Court's

12  decision to the Board of Immigration Appeals, and on July 14, 2017, the Board dismissed

13  plaintiff's appeal.  *Id.*; Petition, Ex. A at 1–5.

14                  On July 19, 2017, plaintiff filed a petition for review and request for emergency

15  stay of removal proceedings with the Ninth Circuit.  *See generally* Petition.  On December 19,

16  2017, the Ninth Circuit transferred the matter to this court to resolve the question of whether

17  plaintiff is a United States citizen based on his contention he was born in the United States.

18  Transfer Order.  At the time of transfer, the parties had yet to thoroughly investigate the viability

19  of plaintiff's claim through the discovery process.  Mot. at 2; Joint Status Rep., ECF No. 7, at 3–

20  4.

21                  After thirteen months of discovery, defendant moved for summary judgment,

22  contending there is no genuine issue of material fact regarding plaintiff's birthplace as Coatlan

23  del Rio, Morelos, Mexico, which is not within the United States; therefore as a matter of law

24  plaintiff is not a United States citizen.  *See generally* Mot.  Plaintiff opposes the motion, arguing,

25  *inter alia*, that defendant relies on a fraudulent birth certificate to establish citizenship.  Opp'n.

26  On October 3, 2019, the court heard oral argument on the motion.  Counsel Nienke Schouten

27  appeared on behalf of plaintiff; counsel Victor Lawrence appeared for defendant.  At hearing the

28  court provided the parties an opportunity to file a stipulation regarding the consistency of a

1   certain exhibit provided during discovery and discussed at hearing.  On October 10, 2019, the

2   parties stipulated to the consistency of that exhibit.  *See* ECF No. 26.  Thereafter, the court

3   submitted the matter for resolution by written order.

4       B.      Disputed and Undisputed Facts

5               Local Rule 260(a) provides that a summary judgment movant must produce a

6   "Statement of Undisputed Facts" enumerating material facts and the source upon which the

7   movant relies to establish those facts.  E.D. Cal. L.R. 260(a).  Defendant provides the following

8   itemized Statement of Undisputed Facts ("UF"), with supporting evidence:

9           1. Defendant has obtained a certified birth registry from the Mexican
            Government which officially documents that Victor Brito Sanchez
10          was born in Coatlan del Rio, Mexico, on April 1, 1990.   *See*
            Declaration of Victor M. Lawrence ("Lawrence Decl.") at Exhibit A.

11
            2. The certified birth registry documenting Sanchez's Mexican birth
12          contains the names of Mr. Sanchez's parents as well as the name of
            his maternal and paternal grandparents.  *Id*; *see* also Lawrence Decl.
13          at Exhibit B (excerpts of deposition testimony of Mr. Sanchez's
            biological mother, Rosa Lopez at 86–88).
14
            3. Plaintiff Sanchez's biological mother and father, who were both
15          born in Mexico, began living together in Coatlan del Rio, Morelos,
            Mexico in approximately 1985. *Id.* at 12–14.
16
            4. Ms. Lopez testified that her son Victor was born on April 1, 1990,
17          but that she has no documents or other information to support her
            claim that she was in the United States when Victor's birth occurred.
18          *Id.* at 21–23, 26-27, 32, 56, 96.

19          5. Ms. Lopez has no photographs or medical records to prove that
            she was in the United States at the time of Victor's birth, and she
20          does not possess a certified document from any governmental agency
            or any hospital showing that Victor was born in the United States. *Id.*
21          at 27–28, 66; Lawrence Decl. at Exhibit C (Plaintiff's October 1,
            2018 Updated Responses to Defendant's First Set of Requests for
22          Admissions to Plaintiff).

23          6. Although Ms. Lopez testified at her deposition that she came to
            the United States in May 1989 with "a lot of people," she could not
24          identify any of them aside from Victor's biological father and her
            daughter who was two years old at the time.  Lawrence Decl. at
25          Exhibit B at 23–24.

26          7. The whereabouts of Plaintiff's biological father are unknown. *Id.*
            at 29–30.
27

28  /////

3

1

2

8.   Plaintiff Sanchez testified he does not remember and does not know where he was born, but believes his mother's testimony. Lawrence Decl. at Exhibit D (excerpts of deposition testimony of Mr. Sanchez at 17, 32).

3

4

9.   Sanchez stated that the only proof he has of his U.S. citizenship is his possession of a social security card.  *Id.* at 35–36.

5

6

10.  Sanchez testified he was positive that the signature on his social security card was his father's signature, but could not explain why that was the case.  *Id.* at 33.

7   Mot. at 3–4.

8          Local Rule 260(b) provides that an opposing party must reproduce the itemized

9   Statement of Undisputed Facts and admit facts where undisputed or deny facts where disputed.

10   L.R. 260(b).  "The opposing party may also file a concise 'Statement of Disputed Facts,' . . . of

11   all additional material facts as to which there is a genuine issue precluding summary judgment or

12   adjudication."  *Id.*  Here, plaintiff had not complied with Local Rule 260(b) and has not

13   responded to defendant's itemized Statement of Undisputed Facts.  Defendant contends this

14   failure constitutes a wholesale admission of defendant's undisputed facts, or, at the very least, a

15   critical admission of the authenticity of the Mexican birth registry document defendant provides

16   in support of his motion.  Reply at 2.

17          While the court decides the matter on the merits, it notes below, where necessary,

18   the significance of plaintiff's failure to formally contest defendant's Statement of Undisputed

19   Facts, particularly in light of the burden-shifting scheme applicable to matters transferred, as here,

20   to the district court under § 1252(b)(5)(B).

21   II.   LEGAL STANDARD

22          A.   Summary Judgment

23          To the extent summary judgment is relevant here, the court reviews the standards

24   applicable.  A court will grant summary judgment "if . . . there is no genuine dispute as to any

25   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

26   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

27   resolved only by a finder of fact because they may reasonably be resolved in favor of either

28   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

1    The moving party bears the initial burden of showing the district court "that there

2    is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477

3    U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish that

4    there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

5    475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular parts

6    of materials in the record . . .; or show [] that the materials cited do not establish the absence or

7    presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

8    support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

9    nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

10   material facts").  Moreover, "the requirement is that there be no genuine issue of material fact

11   . . . .  Only disputes over facts that might affect the outcome of the suit under the governing law

12   will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247–48

13   (emphasis in original).

14   In deciding a motion for summary judgment, the court draws all inferences and

15   views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at

16   587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).   "Where the record taken as a

17   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

18   issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv.*

19   *Co.*, 391 U.S. 253, 289 (1968)).

20   A court may consider evidence as long as it is "admissible at trial." *Fraser v.*

21   *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the

22   evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)

23   (citing *Celotex Corp.*, 477 U.S. at 324).  The party seeking admission of evidence "bears the

24   burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

25   2002).  If the opposing party objects to the proposed evidence, the party seeking admission must

26   direct the district court to "authenticating documents, deposition testimony bearing on attribution,

27   hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

28   question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86

1    (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and

2    documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

3    1243 (9th Cir. 1979).

4            B.      Transfers Under 8 U.S.C. § 1252(b)(5)(B)

5                    Under 8 U.S.C. § 1252(b)(5)(B), if, during review of removal proceedings, the

6    court of appeals believes a genuine issue of material fact exists as to a petitioner's nationality, the

7    court may transfer the matter to the district court where the petitioner resides for resolution of the

8    factual question regarding nationality.

9                    In *Mondaca-Vega v. Lynch*, the Ninth Circuit set forth the analytical framework

10   the district court must apply when considering a matter transferred under § 1252(b)(5)(B):

11           The government bears the ultimate burden of establishing all facts
             supporting deportability by clear, unequivocal, and convincing
12           evidence. When, however the government offers evidence of a
             foreign birth, a rebuttable presumption of alienage arises, shifting the
13           burden to the alleged citizen to prove citizenship. Upon production
             by a petitioner of substantial credible evidence of the citizenship
14           claim, this presumption bursts and the burden shifts back to the
             government to prove the respondent removable by clear and
15           convincing evidence.

16   808 F.3d 413, 419 (9th Cir. 2015) (citations, quotations and alterations omitted).  In other words,

17   "the government starts out with a clear and convincing evidentiary burden, is relieved of that

18   burden if the presumption applies, and is left with that burden if the petitioner shows substantial

19   credible evidence of citizenship."  *Olivas v. Whitford*, No. 14-CV-1434-WQH-BLM, 2019 WL

20   3974086, at *8 (S.D. Cal. Aug. 22, 2019) (citing *Mondaca-Vega*, 808 F.3d at 419).

21                   As to petitioner's burden to produce "substantial credible evidence," the second

22   step in the burden-shifting scheme, *Mondaca-Vega* provides no clear direction; however, in the

23   immigration context, "the Ninth Circuit [has] explained that '[s]ubstantial evidence is more than a

24   mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to

25   support a conclusion.'"  *Alexander v. Sessions*, 263 F. Supp. 3d 740, 742 (D. Ariz. 2017)

26   (alteration in original) (quoting *Rivera v. Mukasey*, 508 F.3d 1271, 1274 (9th Cir. 2007)); *Rose v.*

27   *Sessions*, 679 F. App'x 557, 559 (9th Cir. 2017) ("Substantial evidence is more than a mere

28   scintilla, . . . but less than a preponderance." (alteration in original) (internal quotations omitted)).

1    III.     DISCUSSION

2           A.     Defendant's Initial Burden: Clear, Unequivocal and Convincing Evidence

3                  1.     Parties' Positions

4                  In support of his initial burden to prove non-citizenship by clear, unequivocal and

5    convincing evidence, defendant provides an authenticated birth registry document from the

6    government of Mexico "showing that Victor Brito Sanchez was born in Mexico on April 1,

7    1990." Mot. at 6; Lawrence Decl. ¶ 3, ECF No. 20-2, Ex. A (Mexican birth registry for Victor

8    Manual Sanchez Brito).  Defendant argues the authenticity of the birth registry is established by

9    the certification statements obtained with the record and the testimony of plaintiff's mother that

10   the registry accurately reflects the names of plaintiff's parents and maternal and paternal

11   grandparents.  Mot. at 6; Lawrence Decl. ¶ 4, Ex. B (excerpted deposition testimony of plaintiff's

12   mother, Rosa Brito Lopez).  Additionally, defendant contends the birth registry shows plaintiff

13   was born in Coatlan del Rio, Morelos, "the same town where Plaintiff's mother testified she lived

14   with Plaintiff's biological father, starting in 1985." *Id.*  This evidence, defendant asserts, is clear

15   and convincing proof of plaintiff's alienage; therefore, a rebuttable presumption exists, and

16   plaintiff bears the burden to prove United States citizenship by "substantial credible evidence."

17   *Id.*

18                 In opposition, plaintiff contends defendant fails to meet his initial burden of

19   proving alienage by clear, unequivocal and convincing evidence because the "Mexican birth

20   certificate, which is dated months after Plaintiff's birth, . . . is a fraud." Opp'n at 3.  Plaintiff cites

21   the deposition testimony of Patricia Fisher, a Certified Fraud Specialist, stating that the signature

22   of plaintiff's mother, Rosa Brito Lopez ("Ms. Lopez") on the birth certificate is fraudulent.  *Id.* 3–

23   4.  Fisher testified that based on her knowledge and experience, and having compared Ms.

24   Lopez's known signature against the signature on the birth certificate, "it is [her] opinion that

25   Rosa Lopez did not sign the name *Rosa Brito Lopez* on the Mexican birth certificate in Exhibit

26   B." *Id.* at 4 (emphasis in original).  Fisher's opinion, plaintiff contends, casts doubt on the

27   accuracy of the birth certificate because, as plaintiff's mother, Ms. Lopez's signature "is the most

28

7

1    important . . . given that she is the primary witness . . . ."  *Id.*  Fisher's testimony, plaintiff argues,

2    "establishes evidence that the Plaintiff was registered in Mexico under fraudulent means."  *Id.*

3         Plaintiff also cites the work of Gretchen Kuhner, director of the Institute for

4    Women in Migration, for the proposition that a Mexican birth certificate is not per se evidence of

5    a registrant's birth in Mexico because many Mexican-American families undergo "double

6    registration," a practice where Mexican parents register their U.S. citizen children "as if they had

7    been born in Mexico because it is easier than obtaining the dual nationality registration."  *Id.* at 6–

8    7; *id.*, Ex. C, ECF No. 21-3, at 1–10 (expert disclosure of Gretchen Kuhner).  Plaintiff maintains

9    that this common registration practice, combined with the fraudulent nature of plaintiff's Mexican

10   birth certificate, gives rise to a genuine issue of material fact requiring denial of defendant's

11   summary judgment motion.  *Id.* at 7.

12        2.    Analysis

13        The court finds defendant satisfies his initial burden under the *Mondaca-Vega*

14   burden-shifting framework by providing sufficiently clear evidence plaintiff was born in Mexico,

15   as explained below.  As the *Mondaca-Vega* court explained, "[w]hen . . . the government offers

16   evidence of foreign birth, a 'rebuttable presumption of alienage' arises . . . ."  808 F.3d at 419

17   (quoting *Ayala-Villanueva v. Holder*, 572 F.3d 736, 737 n.3 (9th Cir.2009)); *see Chau v. I.N.S.*,

18   247 F.3d 1026, 1029 (9th Cir. 2001); *Tapia-Felix v. Barr*, No. CV-15-01464-PHX-SPL, 2019

19   WL 2137314, at *3 (D. Ariz. May 16, 2019) ("The Government has presented evidence of

20   Petitioner's foreign birth that gives rise to a rebuttable presumption of alienage, shifting the

21   burden to Petitioner to establish a valid claim to citizenship.").

22        Specifically, defendant provides the authenticated birth certificate from the

23   government of Mexico stating, on its face, that plaintiff was born in Coatlan del Rio, Morelos,

24   Mexico on April 1, 1990.  Lawrence Decl., Ex. A.  The document contains a sworn statement of

25   authenticity by Jeannette Vega, Representative of HSI[3] in Mexico, and a signed certification by

26   Paula Walker, Vice Consul of the United States, at Mexico, D.F.  *Id.*  The original birth

27

28        [3] The record does not appear to identify what "HSI" stands for.

8

1    certificate, translated to English from Spanish by certified translator Steven A. Miller, lists Victor

2    Manuel Sanchez Carrillo as plaintiff's father and Rosa Brito Lopez as plaintiff's mother. *Id.* The

3    certificate also lists Alejandro Sanchez Paz and Loreto Carrillo Reynoso as the paternal

4    grandparents, and Vicente Brito Mendoza and Enedina Lopez Guzman as the maternal

5    grandparents. *Id.* Loreto Carrillo Reynoso, grandmother, is listed as the person other than the

6    parents that presented the form. *Id.* The listed registration date is July 18, 1990. *Id.*

7              In her deposition testimony, Ms. Lopez confirmed the above names are indeed

8    listed on the birth certificate. Lawrence Decl., Ex. B, Lopez Depo. at 86:23–88: 23. Lopez also

9    testified that plaintiff was born on April 1, 1990, but she possesses no documentation supporting

10   her claim he was born in the United States or that she was in the United States at the time of his

11   birth. Lopez Depo. at 21:19–23:11, 26:21–27:25, 56:11–25, 96:8–14. Ms. Lopez admitted this

12   fact in her updated responses to defendant's first set of requests for admissions ("RFA") to which

13   she replied: "Victor Manuel Sanchez Brito does not possess a certified document from any

14   governmental agency or any hospital showing that he was born in the United States of America."

15   Lawrence Decl., Ex. C, ECF No. 20-3, at 2 (plaintiff's updated RFA response); *see also* Lopez

16   Decl., ECF No. 26-1 (sworn declaration admitting same). Additionally, Ms. Lopez testified that

17   she came to the United States in May 1989 with "a lot of people," but she is unable to identify

18   any persons other than plaintiff's biological father, who is unavailable, and her daughter, who was

19   two years old at the time. Lopez Depo. at 23:8–23.

20             Plaintiff testified in his deposition that he does possess a social security card in his

21   name, signed by his father, Lawrence Decl., Ex. D, ECF No. 20-3, Brito Depo. at 33:6–20;

22   however, defendant correctly notes that United States citizenship is not required to obtain a valid

23   social security card, Mot. at 7 (citing 20 C.F.R. § 422.107). Plaintiff concedes the uncertain

24   relevance of his social security card by failing to offer any argument in opposition. *See generally*

25   Opp'n; Reply at 7; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 999 (9th Cir. 2002)

26   (arguments not presented in opposition to summary judgment are waived).

27             Plaintiff's main contention, that the Mexican birth certificate proffered by

28   defendant is a fraud, does not stand in the way of defendant's ability to meet its initial evidentiary

1    burden.  Plaintiff relies on the expert opinion of Patricia Fisher, a Certified Fraud Specialist, who

2    compared handwriting samples of Rosa Lopez against the signature appearing on plaintiff's birth

3    certificate, provided as plaintiff's exhibit A, ECF No. 21-1.  Fisher concluded that Lopez did not

4    sign her name on plaintiff's Mexican birth certificate.  Opp'n at 4.  The flaw in this contention,

5    however, is that Fisher bases her conclusion on an entirely different document than the document

6    on which defendant relies.  As plaintiff notes, "Defendant submits another version of the Mexican

7    Birth Certificate in his Motion for Summary Judgment. . . . Both versions are in the

8    Administrative Record and both appear to come from the Registry in Mexico."  Opp'n at 4 n.2.

9    There do appear to be two versions of plaintiff's Mexican birth certificate.  Plaintiff uses his

10   version, which displays a signature for his mother only in his effort to disprove the authenticity of

11   his mother's signature on the version supplied by defendant.  *Id.* at 3–5.[4]  But the version supplied

12   by defendant, Lawrence Decl., Ex. A, contains no signature attributed to Ms. Lopez, and

13   defendant makes no contention that it does.  *See* Reply at 4 ("The signature is not present on

14   Defendant's birth registry, and Ms. Lopez is *not* listed as a person who presented the child for

15   registration on the authenticated birth registry." (emphasis in original)).  Put another way,

16   plaintiff relies on a purportedly fraudulent document to establish the fraudulence of a separate

17   document omitting the signature plaintiff says is fraudulent; plaintiff's expert discredits the

18   authenticity of a document upon which defendant does not rely.

19            Moreover, plaintiff does not directly contest the authenticity of the birth certificate

20   produced by defendant.  As noted above, plaintiff has not complied with Local Rule 260(b) by

21   not responding to defendant's itemized Statement of Undisputed Facts, which specifically

22   identifies defendant's exhibit A as a certified birth registry from the Mexican government "which

23   officially documents that Victor Brito Sanchez was born in Coatlan del Rio, Mexico, on April 1,

24   1990."  Mot. at 3; *see generally* Opp'n; Reply at 2–3.  It is the court's prerogative to treat such a

25

26            [4] Because plaintiff does not seek to establish the authenticity of the separate birth
     certificate he provides, the court does not dwell on the significance of much of the same
27   information appearing on both documents, including the detail that plaintiff was described as born
     at 11:20 in the morning.  *See* Reply at 4 (comparing defendant's exhibit A with plaintiff's exhibit
28   A).

1    failure to respond as an outright admission.  *See Beard v. Banks*, 548 U.S. 521, 527 (2006) ("[B]y

2    failing specifically to challenge the facts identified in the defendant's statement of undisputed

3    facts, [plaintiff] is deemed to have admitted the validity of the facts contained in the [defendant's

4    statement.").  Plaintiff merely points to the signature he says is fraudulent on the birth certificate

5    he provides.

6            Plaintiff does make passing reference to the roughly three-month difference

7    between the July 18, 1990 registration date listed on the birth certificate provided by defendant

8    and plaintiff's April 1, 1990 date of birth.  Opp'n at 3–4.  Plaintiff provides no authority,

9    however, for the suggestion that a Mexican birth certificate's authenticity cannot be accepted if

10   not "registered" contemporaneously or within days of birth.  Here, the fact that plaintiff's birth

11   certificate was officially registered with the Civil Registry in Mexico approximately three months

12   after his birth does not undermine the authenticity of the birth certificate produced by defendant.

13   *Cf. Lopez v. U.S. Dep't of State, ex rel. Clinton*, No. 3:11-CV-I069-AC, 2013 WL 121804, at *1

14   (D. Or. Jan. 9, 2013) (providing background and noting roughly two-month difference between

15   plaintiff's birth date and date of registration with Mexican government).

16           Finally, there are additional facts the court must treat as admitted given plaintiff's

17   failure to formally challenge the facts or present any argument in opposition.  Plaintiff makes no

18   argument that the names listed on the birth certificate are incorrect, UF 2; that Rosa Lopez began

19   living in Coatlan del Rio, Morelos, Mexico, in 1985, the same location listed on plaintiff's birth

20   certificate, UF 3; that Ms. Lopez possesses no documentation, photographs or medical records

21   supporting her claim plaintiff was born in the United States, UF 4–5; that a document purporting

22   to be a birth certificate from Wildomar, California,[5] was authentic, Reply at 7; or that his

23   possession of a social security card is relevant to establishing proof of citizenship, *id.*  These

24   conceded facts all bolster defendant's ability to meet his initial burden of proof.

25

26

27           [5]  At hearing, plaintiff's counsel noted that the hospital in Wildomar identified on the
     purported birth certificate no longer exists and indicated she would no longer rely on this

28   document.

                                                11

1      This evidence, taken together, satisfies defendant's evidentiary burden at the first

2   step and creates a rebuttable presumption of plaintiff's alienage by virtue of documentation of his

3   birth in Coatlan del Rio, Morelos, Mexico, on April 1, 1990.  *Cf. Waziri v. U.S. Immigration &*

4   *Naturalization Serv.*, 392 F.2d 55, 57 (9th Cir. 1968) ("[T]he [Supreme] Court left no doubt that

5   the clear, unequivocal, and convincing evidence test is less stringent than the criminal standard,

6   proof beyond a reasonable doubt.").  The court thus turns to whether plaintiff has rebutted the

7   presumption by producing substantial credible evidence of United States citizenship.

8          B.      Plaintiff's Burden: Substantial Credible Evidence

9      To burst the presumption of alienage, plaintiff must show by substantial credible

10  evidence he is a United States citizen.  *Mondaca-Vega*, 808 F.3d at 419; *Ayala-Villanueva*, 572

11  F.3d at 738 n.3.  "Substantial evidence is more than a mere scintilla and is such relevant evidence

12  as a reasonable mind might accept as adequate to support a conclusion."  *Rivera*, 508 F.3d at

13  1274 (quoting *Turcios v. INS*, 821 F.2d 1396, 1398 (9th Cir. 1987)).

14          1.      Parties' Positions

15      Plaintiff submits the following evidence in support of his claim he is a United

16  States citizen: (1) written and deposition testimony of his mother, Rosa Lopez, that he was born

17  in the United States, Opp'n at 8; RFA at 3; Lopez Depo. at 32:12–16; Lopez Decl. ¶ 1, and (2)

18  Ms. Lopez's response on a 1995 questionnaire that plaintiff and two of her other children were

19  born in the United States, while her oldest daughter was born in Mexico, Opp'n, Ex. E

20  (questionnaire), ECF No. 21-5.  Plaintiff maintains this evidence provides credible direct and

21  circumstantial proof he was born in the United States.  Opp'n at 8.

22      Defendant contends the statements of plaintiff's mother are insufficient to raise a

23  genuine issue of material fact because "self-serving" statements must be substantiated by

24  probative supporting evidence.  Reply at 6 (citing *F.T.C. v. Publishing Clearing House*, 104 F.3d

25  1168, 1171 (9th Cir. 1997), and *California Sportfishing Protection Alliance v. River City Waste*

26  *Recyclers*, LLC, 205 F. Supp.3d 1128, 1135 (E.D. Cal. 2016)).  Additionally, defendant argues

27  Ms. Lopez's statements on an unauthenticated questionnaire do not create a material question of

28

12

1    fact because "the document itself is *not* evidence of Sanchez's citizenship."  *Id.* at 7 (emphasis in

2    original) (citing *Mondaco-Vega*, 808 F.3d at 419).

3                    2.       Analysis

4                    On this record the court finds a genuine question of material fact exists regarding

5    plaintiff's ability to rebut the presumption of alienage through substantial credible evidence.  As

6    discussed at hearing and stipulated by the parties in a post-hearing submission, Ms. Lopez

7    declared under penalty of perjury in support of plaintiff's updated answers to defendant's first

8    requests for admission that her son was born in the United States, she did not sign the birth

9    certificate defendant provides to show alienage and she believes her son "has a legitimate claim to

10   United States citizenship."  Lopez Decl., ECF No. 26-1.  These assertions made now, for the

11   purposes of this case, are supported by her deposition testimony providing plausible detail.

12   During deposition, Ms. Lopez stated that when she moved to the United States in 1989, she lived

13   on a ranch in Temecula, California, and plaintiff was born "[i]n the trailer where we lived."

14   Lopez Depo. at 27: 12–32:16.  Further, in a document titled "Questionnaire on the Maintenance

15   of Children" that Lopez completed in 1995, more than 20 years before plaintiff's removal

16   proceedings began, Lopez listed three of her four children as being born in the United States,

17   including plaintiff, but identified her oldest child as born in Mexico.  Opp'n, Ex. E at 3.[6]  As

18   plaintiff argues, Ms. Lopez's willingness to list one of her children as born in Mexico, at a time

19   when plaintiff was not facing removal proceedings, carries weight; at that time she had no reason

20   to fabricate the place of any of her children's births.  *See* Opp'n at 8.

21                   Defendant argues Ms. Lopez's self-serving, unsubstantiated declaration does not

22   create a material dispute of fact.  Reply at 6–8.  It is true that a self-serving declaration does not in

23   itself create a genuine question of fact without further evidentiary support.  *See Nigro v. Sears,*

24

25        [6] Defendant argues the court should not rely on the proffered questionnaire because it is
     unauthenticated and not signed under penalty of perjury.  Reply at 7.  At hearing, however,
26   plaintiff's counsel represented that the questionnaire could be authenticated at trial if necessary.
     Plaintiff's assurance satisfies the threshold evidentiary standard to justify the court's reliance at
27   the summary judgment stage.  *See Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110,
     1120 (E.D. Cal. 2006) ("Rule 56(e) requires only that evidence '*would* be admissible', not that it
28   presently be admissible." (emphasis in original) (quoting Fed. R. Civ. P. 56(e))).

                                                13

1    *Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015).  However, when a declaration is based on a

2    subject of which the declarant has personal knowledge, is legally relevant, and displays internal

3    consistencies, the district court may rely on that declaration in finding a question of fact exists.

4    *See, e.g.*, *Fed. Trade Comm'n v. Marshall*, No. 17-56476, 2019 WL 3202772, at *1 (9th Cir. July

5    16, 2019) (district court erred "to the extent [it] disregarded the entirety of [defendant's]

6    declaration on the basis that it was self-serving . . . .  The declaration may have been self-serving,

7    but it contained some statements that were based on personal knowledge, legally relevant, and

8    internally consistent." (citation and internal quotations omitted)).  Here, plaintiff's birth is

9    something Ms. Lopez, as his mother, knows about fundamentally.  Her declaration is legally

10   relevant given the Circuit's charge to this court to resolve the factual question of plaintiff's

11   alienage.  And, finally, her declaration, deposition testimony and questionnaire responses display

12   a remarkable consistency.  Plaintiff presents sufficient evidence to raise a genuine question of fact

13   regarding whether he was born in the United States, and thus whether he can rebut the

14   presumption.  This question must be resolved by a factfinder.

15              This conclusion is particularly appropriate given the court's need to make

16   credibility determinations when considering a referral under § 1252(b)(5)(B), including in the

17   face of a summary judgment record that contains apparent contradictions.  In a recent unpublished

18   Ninth Circuit opinion reviewing a district court's finding that the plaintiff failed to satisfy the

19   second step under the *Mondaca-Vega* scheme, *Tiznado-Reyna v. Barr*, 753 F. App'x 431 (9th Cir.

20   2019),[7] the Circuit articulated this tension well, and explained the court's paramount role in

21   resolving this tension:

22              *Mondaca-Vega* emphasized that if foreign birth is established, a
             petitioner must come forth with "credible" evidence in support of a
23           claim of United States nationality. The term "credible" necessarily
             describes a burden of persuasion, not production. Because a district
24           court must, in considering summary judgment, view the submitted
             evidence in the light most favorable to the non-moving party, the use
25           of the word "credible" in *Mondaca-Vega* is inconsistent with a

26              [7] Federal Rule of Appellate Procedure counsels that "[a] court may not prohibit or restrict
27   the citation of federal judicial opinions, orders, judgments, or other written dispositions that have
     been . . . issued on or after January 1, 2007.  Fed. R. App. P. 32.1(ii); *see also* 9th Cir. R. 36-3
28   (citation of unpublished opinions).

                                                    14

1
2
3
4

> summary judgment standard. Rather, it describes a burden of persuasion, because the only purpose of the remand is to allow the district court to assess the weight of evidence on the issue of citizenship, a process that necessarily involves credibility determinations. The district court did not clearly err in that assessment here.

5    *Id.* at 432 (citations omitted).  On this record the court cannot make a definitive credibility

6    determination so as to eliminate the factual questions requiring resolution for the court to find

7    whether plaintiff has presented substantial credible evidence to rebut the presumption of his

8    alienage.

9           For these reasons, defendant's motion for summary judgment must be denied.

10   IV.    CONCLUSION

11          For the reasons discussed above, defendant's motion for summary judgment, ECF

12   No. 20, is DENIED.  This matter shall proceed to a bench trial on **November 9, 2020 at 1:30

13   P.M.**  A final pretrial conference is set for **September 25, 2020 at 10:00 A.M.**  The parties final

14   pretrial conference statements shall be filed no later than fourteen (14) days prior to the final

15   pretrial conference.

16          IT IS SO ORDERED.

17   DATED:  July 14, 2020.

18
19                                        CHIEF UNITED STATES DISTRICT JUDGE
20
21
22
23
24
25
26
27
28